**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

STATE OF TEXAS, et al., §
§
     Plaintiffs, §
§
v. §    Case No. 6:23-cv-161-JDK
§
CENTERS FOR MEDICARE AND §
MEDICAID SERVICES, et al., §
§
     Defendants. §

**MEMORANDUM OPINION AND ORDER**

The State of Texas seeks to set aside a new Final Rule and Bulletin addressing Medicaid funding and the redistribution of Medicaid payments.

Previously, the Court enjoined the Centers for Medicare and Medicaid Services ("CMS") from enforcing a 2023 Bulletin similar in substance to the Rule and Bulletin at issue here. As the Court explained, the 2023 Bulletin violated the Administrative Procedure Act because it exceeded CMS's delegated authority under the Social Security Act. *Texas v. Brooks-LaSure*, 680 F. Supp.3d 791, 809 (E.D. Tex. 2023). "CMS 'may not rewrite clear statutory terms to suit its own sense of how the statute should operate,'" the Court held. *Id.* at 809 (quoting *In re Benjamin*, 932 F.3d 293, 300 (5th Cir. 2019)).

Undeterred, CMS issued the Final Rule and a new Bulletin ("2024 Bulletin"), both of which largely adopt the interpretation of the relevant statutory provisions rejected by the Court in analyzing the 2023 Bulletin.

1

Texas challenges these new regulations, arguing that they likewise conflict with the Social Security Act.  As explained below, the Court agrees.

The Court thus **GRANTS-in-part** Texas's motion for summary judgment (Docket No. 75) and enters summary judgment in Texas's favor on Counts I, III, V, and VI.   Because Texas has abandoned Counts II and IV, the Court **GRANTS-in-part** CMS's cross-motion for summary judgment (Docket No. 78) as to these claims, which are **DISMISSED**.

## I. Background

Medicaid is a jointly funded program, under which the federal government matches state contributions for medical care for low-income patients.  The Social Security Act, 42 U.S.C. §§ 1396, *et seq.*, permits states to fund their share by assessing a "broad-based" tax on health-care providers.  States may not, however, fund their share through taxes that "hold harmless" providers—i.e., states may not guarantee that providers will recoup their tax contributions.  42 U.S.C. § 1396b(w)(4).  The dispute here centers on this "hold harmless" provision.

Before addressing this dispute, the Court explains (A) the relevant features of Medicaid, including hold-harmless provisions, and (B) Texas's Medicaid-funding scheme.  This portion of the Order draws heavily from the Court's prior decision.  *See Brooks-LaSure*, 680 F. Supp.3d at 798–802.  The Court then outlines (C) CMS's proposed regulatory changes, (D) its 2023 Bulletin and the Court's preliminary injunction, (E) the Final Rule and 2024 Bulletin and (F) the subsequent proceedings in this Court.

## A. The Medicaid Program

"Medicaid, established under Title XIX of the Social Security Act . . . is a 'cooperative federal-state program that provides federal funding for state medical services to the poor.'" *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 35 (D.C. Cir. 2015) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004)); Social Security Amendments of 1965, Pub L. No. 89-97, 79 Stat. 286.  To qualify for federal funding, states must submit a Medicaid plan detailing how they will meet the Social Security Act's requirements.  42 U.S.C. § 1396a(a).

If a state's plan satisfies the requirements of the Social Security Act, the federal government acting through HHS helps fund the program according to a matching formula.  *Id.* § 1396b(a).  The rate at which HHS matches a state's Medicaid expenditures for covered services ranges from 50% to 83%.  *Id.* § 1396d(b).

Not all state funding qualifies for matching federal dollars, however.  "In the late 1980s and early 1990s, states began to take advantage of a 'loophole' in the Medicaid program that allowed states to gain extra federal matching funds without spending more state money."  *Protestant Mem. Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 726 (7th Cir. 2006).  States took advantage of this loophole in several ways. Medicaid Program; Medicaid Fiscal Accountability Regulation, 84 Fed. Reg. 63,722, 63,730 (Nov. 18, 2019) (proposed rule).  In one common scheme, states imposed taxes on hospitals, while simultaneously agreeing to repay hospitals the amount of their tax payment.  *Id.*  As a result, a state could draw additional federal matching funds without having to contribute additional state money towards its Medicaid

3

contribution. *Id.* Taxpaying hospitals too came out "harmless" in these agreements, recouping their increased tax burden through state payments. *Id.*

In response, Congress amended the Social Security Act by passing the Medicaid Voluntary Contribution and Provider-Specific Tax Amendments of 1991, Pub. L. No. 102-234, 105 Stat. 1,793 (codified as amended at 42 U.S.C. § 1396b(w)). There, Congress clarified that states may fund their share of Medicaid by assessing taxes on health-care-related items, services, or providers, but they may do so only if the tax is (1) "broad-based" and (2) contains no "hold harmless provision." § 1396b(w)(1)(A)(iii). The statute defined "hold harmless provision" in three ways, only the third of which is relevant here. Under that definition—which has not changed—a hold-harmless provision exists if:

> (C)
> (i) The State or other unit of government imposing the tax provides (directly or indirectly) for any payment, offset, or waiver that guarantees to hold taxpayers harmless for any portion of the costs of the tax.

*Id.* § 1396b(w)(4). Congress instructed HHS to reduce matchable state funds by the amount of any revenue received from a health-care-related tax "if there is in effect a hold harmless provision (described in paragraph (4)) with respect to the tax." *Id.* § 1396b(w)(1)(A)(iii).

After the statute took effect, CMS issued rules implementing the statutory "hold harmless provision" definition found at § 1396b(w)(4). Medicaid Program; Limitations on Provider-Related Donations and Health Care-Related Taxes; Limitations on Payments to Disproportionate Share Hospitals, 58 Fed. Reg. 43,156 (Aug. 13, 1993). In 2008, the agency updated the regulations, seeking to "clarify" the

regulatory tests for hold-harmless provisions.  *See* Medicaid Program; Health Care Related Taxes, 73 Fed. Reg. 9,685, 9,686 (Feb. 22, 2008).  Under the 2008 regulations, a hold-harmless provision exists under the third definition if:

> The State (or other unit of government) imposing the tax provides for any direct or indirect payment, offset, or waiver such that the provision of that payment, offset, or waiver directly or indirectly guarantees to hold taxpayers harmless for all or any portion of the tax amount.

*Id.* at 9,699 (codified at 42 C.F.R. § 433.68(f)(3) (2008)).

### B. Texas Local Provider Participation Fund

In 2013, the Texas legislature authorized certain hospital districts, counties, and municipalities to collect "mandatory payments from each of those [entities] to be used to provide the nonfederal share of a Medicaid supplemental payment program." TEX. HEALTH & SAFETY CODE § 300.0001; *accord* Act of May 24, 2013, 83d Leg., R.S., ch. 1369, § 18, 2013 Tex. Gen. Laws 3,630, 3,640 (codified at HEALTH & SAFETY Ch. 288).

If the taxing entity authorizes a "mandatory payment[]" (which both parties here call a "tax"), it must assess the tax based "on the net patient revenue of each" hospital.  HEALTH & SAFETY § 300.0151(a).  This money is then deposited into a "local provider participation fund" and may be used for limited purposes, including intergovernmental transfers to the State to pay the "nonfederal share of Medicaid." *Id.* § 300.0103(a)–(b).  Authorized taxes must be "uniform[]." *Id.* § 300.0151(b).  And Texas law prohibits these programs from "hold[ing] harmless any institutional health care provider, as required under 42 U.S.C. Section 1396b(w)." *Id.*

## C. Proposed Changes

In 2019, CMS proposed a rule to amend its regulations on hold-harmless arrangements.  84 Fed. Reg. at 63,730.  There, CMS explained it had

> become aware of impermissible arrangements that exist where a state or other unit of government imposes a health-care related tax, then uses the tax revenue to fund the non-federal share of the Medicaid payments back to the taxpayers.  The taxpayers enter into an agreement, which may or may not be written, to ensure that taxpayers . . . receive all or any portion of their tax amount back.

84 Fed. Reg. at 63,734.  In the preamble to the proposed changes, CMS clarified that it considered such arrangements to violate the ban on hold-harmless provisions, even if "a private entity makes the redistribution" to another private entity.  *Id.* at 63,735. The agency contended that a purely private arrangement still "constitutes an indirect payment from the state or unit of government to the entity being taxed that holds it harmless for the cost of the tax."  *Id.*

CMS thus proposed to amend the third regulatory hold-harmless definition to specify that the agency would consider the "net effect" of a particular arrangement, described elsewhere as a "totality of the circumstances" analysis.  *Id.* at 63,735.  This analysis would specifically include the "reasonable expectations of the participating entities" and their "reciprocal actions."  *Id.* at 63,777.

In 2021, however, CMS withdrew these proposed amendments.  Medicaid Program; Medicaid Fiscal Accountability Regulation, 86 Fed. Reg. 5,105 (Jan. 19, 2021).  In its notice of withdrawal, CMS noted that "[n]umerous commenters indicated that CMS, in some instances, lacked statutory authority for its proposals . . . ."  *Id.*  Based on the "considerable feedback we received through the public

6

comment process, we have determined it appropriate to withdraw the proposed provisions at this time." *Id.*

### D. 2023 Bulletin and Preliminary Injunction

On February 17, 2023, CMS issued the "Informational Bulletin" addressed in the Court's prior order. *See Brooks-LaSure*, 680 F. Supp.3d at 801. The 2023 Bulletin formally adopted the agency's position from the 2019 withdrawn amendment. Docket No. 1, Ex. 1 at 1. In the 2023 Bulletin, CMS again expressed concern about private arrangements:

> Recently, CMS has become aware of some health care-related tax programs that appear to contain a hold harmless arrangement that involves the taxpaying providers redistributing Medicaid payments after receipt to ensure that all taxpaying providers receive all or a portion of their tax costs back (typically ensuring that each taxpaying provider receives at least its total tax amount back).

*Id.* The 2023 Bulletin concluded that these arrangements "would constitute a prohibited hold harmless provision under" both 42 U.S.C. § 1396b(w)(4)(C)(i) and 42 C.F.R. § 433.68(f)(3). *Id.* at 5. Accordingly, CMS promised to "reduce a state's medical assistance expenditures by the amount of health care-related tax collections that include" these arrangements. *Id.*

The 2023 Bulletin also required states to collect and disclose information concerning these arrangements to CMS. *Id.* Specifically, CMS instructed states to:

- "make clear to their providers that these arrangements are not permissible under federal requirements, learn the details of how health care-related taxes are collected, and take steps to curtail these practices if they exist";

- collect "detailed information available regarding their health care-related taxes"; and

- "make available all requested documentation regarding arrangements involving possible hold harmless arrangements and the redistribution of Medicaid payments."

*Id.* Further, CMS instructed states to "condition" their providers' participation in Medicaid on the full disclosure of this information. *Id.* The agency warned that "a failure to comply with" these requirements "may result in a deferral or disallowance of federal financial participation." *Id.* (citing 42 C.F.R. § 433.74(d)).

After CMS issued the 2023 Bulletin, Texas filed this lawsuit, arguing that the Bulletin exceeded CMS's statutory authority, did not comport with the APA's notice-and-comment requirement, and was arbitrary and capricious. Docket No. 1 at 26–31. On April 24, 2023, Texas moved for a preliminary injunction to enjoin Defendants from "enforcing the February 17 bulletin or taking [any other] actions in reliance on the bulletin." Docket No. 10 at 34. The Court, as noted above, granted Texas's motion and enjoined the enforcement of the 2023 Bulletin. *See Brooks-LaSure*, 680 F. Supp.3d at 811. The Court rejected CMS's numerous arguments to avoid the merits, *see id.* at 802–07, and held that Texas was likely to succeed on the merits of its claim that the 2023 Bulletin violated the APA, *see id.* at 808–09. By expanding the definition of "hold-harmless provision" to include guarantees by private parties in private agreements, the 2023 Bulletin "exceed[ed] CMS's statutory authority." *Id.* at 808. The Court further determined that Texas had demonstrated a substantial threat of irreparable injury and that the balance of equities and the public interest favored a preliminary injunction. *See id.* at 809–11.

CMS did not appeal the Court's preliminary injunction.

### E. The Final Rule and 2024 Bulletin

Shortly before the Court entered the injunction, CMS proposed a new rule to address "States' monitoring and enforcement efforts."  Medicaid Program; Medicaid and Children's Health Insurance Program (CHIP) Managed Care Access, Finance, and Quality, 88 Fed. Reg. 28,092 (May 3, 2023).  The proposed rule was open for comment before becoming final in April 2024 and effective in June 2024 (the "Final Rule").  Medicaid Program; Medicaid and Children's Health Insurance Program (CHIP) Managed Care Access, Finance, and Quality, 89 Fed. Reg. 41,002 (May 10, 2024).  This Final Rule, which is the Rule at issue here, revises 42 C.F.R. § 438.6(c)(2)(ii) by adding the following:

> Standard for State directed payments . . . (ii) Each State directed payment must meet the following standards.  Specifically, each State directed payment must:
>
> .... 
>
> (G) Comply with all Federal legal requirements for the financing of the non-Federal share, including but not limited to, 42 CFR 433, subpart B;
>
> (H) (1) Ensure that providers receiving payment under a State directed payment attest that they do not participate in any hold harmless arrangement for any health care-related tax as specified in § 433.68(f)(3) of this subchapter in which the State or other unit of government imposing the tax provides for any direct or indirect payment, offset, or waiver such that the provision of the payment, offset, or waiver directly or indirectly guarantees to hold the taxpayer harmless for all or any portion of the tax amount, and (2) Ensure either that, upon CMS request, such attestations are available, or that the State provides an explanation that is satisfactory to CMS about why specific providers are unable or unwilling to make such attestations . . . .

42 C.F.R § 438.6(c)(2)(ii)(G)–(H) (2024).  Although § 438.6 does not define "hold harmless arrangement," CMS elsewhere stated that the Rule adopts the expansive interpretation at issue in the 2023 Bulletin.  "Such hold harmless arrangements

include those that produce a reasonable expectation that taxpaying providers will be held harmless for all or a portion of their cost of a health care-related tax. . . . [This includes] *any* contractual payment arrangement directing how Medicaid managed care plans pay providers." 89 Fed. Reg. 41,077 (emphasis added).

The other portion of the Final Rule challenged by Texas is 42 C.F.R. § 430.3(e) (2024). That subsection states:

> Appeals under Medicaid. Four distinct types of disputes may arise under Medicaid.
>
>       . . . .
>
> (e) Disputes that pertain to disapproval of written approval by CMS of State directed payments under 42 CFR 438.6(c)(2)(i) are also heard by the Board in accordance with procedures set forth in 45 CFR part 16. 45 CFR part 16, appendix A, lists all the types of disputes that the Board hears.

*Id.*

CMS also issued a new Bulletin (the "2024 Bulletin") advising that CMS is adopting the interpretation of "hold-harmless arrangement" set forth in the 2023 Bulletin.

> As discussed in the [2023 Bulletin] and the Managed Care Final Rule, we have identified instances in which states are funding the non-Federal share of Medicaid SDPs [State Directed Payments] and other Medicaid payments through health care-related tax programs that appear to involve an impermissible hold harmless arrangement. In these arrangements, providers appear to have prearranged agreements to redistribute Medicaid payments (or other provider funds that are replenished by Medicaid payments). These arrangements appear to redirect Medicaid payments away from the providers that furnish relatively higher percentages of Medicaid-covered services toward providers that provide lower percentages of, or even no, Medicaid-covered services, with the effect of ensuring that taxpaying providers are held harmless for all or a portion of their cost of the health care-related tax. We acknowledge that states have varying degrees of awareness and involvement in these arrangements.

Given the growing number of SDPs generally and the growing number of SDPs that raise potential financing concerns, including those described in the February 2023 CIB, we stated explicitly in the Managed Care Final Rule (and reflected in our updates to the regulations governing SDPs) that the same financing requirements governing the sources of the non-Federal share apply regardless of delivery system, and that CMS will evaluate the source of the nonFederal share of SDPs for compliance with federal statutes and regulations during the SDP preprint review process.

Accordingly, we finalized revisions to 42 CFR 438.6(c)(2)(ii) to add a new paragraph (c)(2)(ii)(G) to require explicitly that an SDP comply with all Federal legal requirements for the financing of the non-Federal share, including, but not limited to, 42 CFR part 433, subpart B, as part of the CMS SDP preprint review process. This provision is effective 60 days after the date of publication in the Federal Register. We also finalized new paragraph 42 CFR 438.6(c)(2)(ii)(H), to require states to ensure that providers receiving an SDP attest that they do not participate in any hold harmless arrangement for any health care-related tax as specified in 42 CFR 433.68(f)(3) in which the state or other unit of government imposing the tax provides for any direct or indirect payment, offset, or waiver such that the provision of the payment, offset, or waiver directly or indirectly guarantees to hold the taxpayer harmless for all or any portion of the tax amount. The attestation provision is applicable beginning with the first rating period for contracts with MCOs, PIHPs, and PAHPs beginning on or after January 1, 2028.

Docket No. 75, Ex. E at 1–3.

## F. Subsequent Proceedings

After CMS issued the Final Rule and 2024 Bulletin, Texas amended its complaint to challenge these new regulations on the same grounds raised in the State's challenge to the 2023 Bulletin. Docket No. 56. Thereafter, the parties filed cross-motions for summary judgment. Docket Nos. 75; 78.

Texas seeks to vacate 42 C.F.R. §§ 438.6(c)(2)(ii)(G), 438.6(c)(2)(ii)(H), and 430.3(e) as adopted in the Final Rule and declare that CMS's interpretations set forth in the 2023 Bulletin and 2024 Bulletin are unlawful and exceed the agency's statutory

authority.  Docket No. 75 at 2.  Texas also asks the Court to convert its preliminary injunction into a permanent injunction to preclude CMS's enforcement of the Final Rule or its 2024 Bulletin.  *Id.*

CMS argues that the Final Rule and the 2024 Bulletin are consistent with the Social Security Act and the APA.  Docket No. 78.  CMS thus seeks summary judgment on the claims that "Texas has chosen to press," and it seeks dismissal of the claims Texas "fail[ed] to prosecute."  *Id.* at 3.

## II. Analysis

As explained below, the Final Rule and the 2023 and 2024 Bulletins exceed CMS's statutory authority by expanding the meaning of "hold-harmless provision" to include guarantees by private parties in private agreements and by attempting to strip federal courts of jurisdiction over certain disputes.  CMS's new definition of "hold-harmless provision" is also arbitrary and capricious.  The Court thus vacates the challenged portions of the Final Rule and the 2023 and 2024 Bulletins and enjoins CMS's enforcement of these regulations.  Finally, the Court dismisses Texas's claims that the State has abandoned.

### A. Exceeds Statutory Authority

The APA requires courts to "hold unlawful and set aside agency action . . . found to be . . . (C) in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).  The Court has already held that the 2023 Bulletin likely exceeded CMS's statutory authority.  For similar reasons, the Court concludes that the Final Rule and the 2023 and 2024 Bulletins are unlawful under the APA.

**1.**

As noted above, the Social Security Act defines the circumstances in which a hold-harmless provision is present:

> [T]here is in effect a hold harmless provision with respect to a broad-based health care related tax imposed with respect to a class of items or services if the Secretary determines that any of the following applies:
>
> . . . .
>
> (C)
>
> (i) The State or other unit of government imposing the tax provides (directly or indirectly) for any payment, offset or waiver that guarantees to hold taxpayers harmless for any portion of the costs of the tax.
>
> (ii) For purposes of clause (i), a determination of the existence of an indirect guarantee shall be made under paragraph (3)(i) of section 433.68(f) of title 42, Code of Federal Regulations, as in effect on November 1, 2006.

42 U.S.C. § 1396b(w)(4)(C)(i)–(ii). In other words, as the Court previously explained, a hold-harmless provision is in effect when "the *State*" imposes a tax and "the *State*" provides for any "payment . . . that guarantees to hold taxpayers harmless." *Id.* (emphases added). Indeed, "the statute includes a 'tight grammatical link between *the government*, as the actor providing for something, and *a guarantee*, as the thing provided for.'" *Brooks-LaSure*, 680 F. Supp.3d at 808 (quoting *Texas v. Brooks-LaSure*, No. 6:21-CV-00191, 2022 WL 741065, at *3 (E.D. Tex. Mar. 11, 2022)).

In contrast, the Final Rule relies on a definition of "hold-harmless arrangement" that includes wholly private agreements in which the State has no part. *See* 89 Fed. Reg. 41,077 ("[H]old harmless arrangements include . . . *any* contractual payment arrangement directing how Medicaid managed care plans pay providers." (emphasis added)). The Rule then compels states to prohibit these private arrangements. For example, § 438.6(c)(2)(ii)(H)(1) requires states to "[e]nsure that

13

providers receiving payment under a State directed payment attest that they do not participate in any hold harmless arrangement." And § 438.6(c)(2)(ii)(H)(2) directs states to compile these private party attestations and make them available to CMS upon request. Section 438.6(c)(2)(ii)(G) imposes CMS's interpretation of hold-harmless arrangement as a condition on the approval of State Directed Payments (SDPs) during the preprint review process. Similarly, both the 2023 and 2024 Bulletins maintain that the statutory definition of "hold-harmless arrangements" includes private agreements among providers, emphasize that states have an obligation to prohibit them, and clarify that such arrangements will affect states' Medicaid funding. Docket No. 78, Ex. C at 3–4; Docket No. 78, Ex. E at 2–3.[1]

In response, CMS raises the same arguments the Court previously rejected. First, CMS claims that no "grammatical link" exists in the statute. Docket No. 78 at 22. According to CMS, the verb phrase "provides . . . for" takes as its object the noun "payment." *Id.* And the subject of the verb "guarantees" in § 1396b(w)(4)(C)(i) is not a state, but "any payment, offset, or waiver." *Id.* Thus, CMS contends, the statute covers any payment that "guarantees" to hold a taxpayer harmless. But, a "payment" cannot "guarantee" to hold a taxpayer harmless—only a state can. Further, as the Court previously explained, CMS's reading of the statute "decouples

---

[1] The parties do not address the continued relevance of the Bulletins, now that the Rule is final. The Final Rule completed CMS's decisionmaking process because it is not subject to further agency review. *Sackett v. EPA*, 566 U.S. 120, 127 (2012). "Any guidance that could be attributed to the [Bulletins] would be subsumed in any final rule issued by [the agency] on a particular matter." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1008 (9th Cir. 2021) (citing 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling . . . is subject to review on the review of the final agency action.")). Nevertheless, the Court addresses the Bulletins because the Final Rule adopts the 2023 Bulletin's definition of hold-harmless arrangement, the 2024 Bulletin repeats the agency's position, and the parties do not argue otherwise.

the 'grammatical link' found in the statute[] and conditions a state's Medicaid's funding on private agreements over which states have no knowledge or control." *Brooks-LaSure*, 680 F. Supp.3d at 808. "This is undoubtedly why HHS's own Departmental Appeals Board previously held that no hold-harmless arrangement existed where CMS could not point to 'any wording in the States' programs that could reasonably constitute an explicit or direct assurance of any payment to the provider taxpayer.'" *Id*. (quoting *In re: Hawaii Dep't of Hum. Servs.*, Docket No. A-01-40 (lead), Decision No. 1981 (Dep't Appeals Bd., Appellate Div. June 24, 2005)).

Second, CMS claims that its reading is consistent with the statute because a state's "associated payment" can be "indirect[]." Docket No. 78 at 21. CMS says that "Congress's adoption in the statute of the Secretary's interpretation of an indirect guarantee in subsection (4)(c)(ii) confirms that Congress did not intend to require that the State make a formal guarantee." *Id.* But as the Court explained, "the statute still requires that the state, not a private party, provide the 'payment' that 'guarantees' to hold taxpayers harmless." *Brooks-LaSure*, 680 F. Supp.3d at 809 (quoting 42 U.S.C. § 1396b(w)(4)(C)(i)). Indeed, in *In re: Hawaii*, the agency's own Departmental Appeals Board (DAB) rejected CMS's argument that "indirect guarantee" is a broad catch-all provision, because that view is "contradicted by the history of the provision and the implementing regulation." Decision No. 1981 at *3; *see also Brooks-LaSure*, 2022 WL 741065, at *3 (noting same).

\*       \*       \*

In sum, CMS has no statutory authority to reach private hold-harmless

15

arrangements or to penalize a state's failure to regulate these agreements. Sections 438.6(c)(2)(ii)(G) and (H) and the 2023 and 2024 Bulletins therefore conflict with the Social Security Act because they are inconsistent with the statutory definition of "hold-harmless provision" found in § 1396b(w)(4)(C)(i). Because courts must "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory . . . authority," 5 U.S.C. § 706(2)(A), (C), these subsections of the Rule and the 2023 and 2024 Bulletins are vacated.

Texas's motion for summary judgment on Count I is granted.

**2.**

Texas challenges an additional provision of the Final Rule, which is contained in new subpart (e) to 42 C.F.R. § 430.3. Docket No. 56 (Count V). Texas contends that § 430.3(e) requires that disputes regarding SDPs must be heard by the DAB, and thus the provision unlawfully strips the courts of jurisdiction. The Court agrees.

In full, § 430.3 states:

Four distinct types of disputes may arise under Medicaid.

(a) Disputes that pertain to whether a State's plan or proposed plan amendments, or its practice under the plan meet or continue to meet Federal requirements are subject to the hearing provisions of subpart D of this part.

(b) Disputes that pertain to disallowances of [Federal Financial Participation] in Medicaid expenditures (mandatory grants) ***are heard*** by the Departmental Appeals Board (the Board) in accordance with procedures set forth in 45 CFR part 16.

(c) Disputes pertaining to discretionary grants . . . ***are also heard by the Board***.

(d) Disputes that pertain to CMS's imposition of suspensions of procedural disenrollments and civil money . . . *are heard by the Board* in accordance with procedures set forth in 45 CFR part 16.

(e) Disputes that pertain to disapproval of written approval by CMS of State directed payments under 42 CFR 438.6(c)(2)(i) *are also heard by the Board* in accordance with procedures set forth in 45 CFR part 16. 45 CFR part 16, appendix A, lists all the types of disputes that the Board hears.

42 C.F.R. § 430.3 (2024), Appeals under Medicaid (emphases added).

As Texas correctly points out, "Congress rarely intends to prevent courts from enforcing its directives to federal agencies." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015). This presumption in favor of judicial review can be rebutted only where "a statute's language or structure demonstrates that Congress wanted an agency to police its own conduct." *Texas v. United States*, 809 F.3d 134, 163 (5th Cir. 2015) (internal quotations omitted). And here, the Social Security Act does not strip the courts of jurisdiction over SDPs. The only relevant provision, 42 U.S.C. § 1316, does not even mention SDPs, much less subject them to DAB review.

In fact, CMS does not argue otherwise. Rather, CMS asserts only that DAB review of SDP disputes is optional. "The administrative process finalized at § 430.3(e) is at the option of the appellant, and States may seek redress in the courts at any time." 89 Fed. Reg. 41,115 (response to public comment on the Rule at notice and comment stage). But CMS misinterprets its own rule. Section 430.3 repeatedly states that certain disputes "are heard by the Board," and CMS does not dispute that this language is mandatory. 42 C.F.R. § 430.3. Section 430.3(e) is no different, providing that "[d]isputes that pertain to disapproval of . . . State directed payments

17

. . . are also *heard by the Board*," 42 C.F.R. § 430.3(e) (emphasis added). Thus, the most straightforward reading of § 430.3(e) is that SDP disputes must be brought first to the DAB. Section 430.3(e)'s reference to 45 C.F.R part 16, appendix A, further bolsters this conclusion. That regulation is titled "What Disputes the Board Reviews," and it states: "This appendix describes programs which use the Board for dispute resolution, the types of disputes covered, and any conditions for Board review of final written decisions resulting from those disputes." *Id.* If disputes under § 430.3(e) are heard in accordance with a section that "use[s] the Board for dispute resolution," then the Rule leaves no other option than DAB review for SDP disputes.

CMS points out that the Final Rule's preamble expressly disclaims any attempt to prevent parties from taking their disputes to the courts. But language in a rule's preamble is not binding. *See Peabody Twentymile Mining, LLC v. Sec'y of Lab.*, 931 F.3d 992, 998 (10th Cir. 2019) ("Here, the limitations that appear in the preamble do not appear in the language of the regulation, and we refuse to engraft those limitations onto the language.").[2]

CMS has thus exceeded its statutory authority in promulgating § 430.3(e), and Texas's motion for summary judgment on Count V is granted.

---

[2] *See Texas v. U.S. Dep't of Health & Hum. Servs.*, 770 F. Supp. 3d 940, 955 (E.D. Tex. 2025) (Kernodle, J.) ("[W]hile the preamble can inform the interpretation of the regulation, it is not binding and cannot be read to conflict with the language of the regulation itself." (citation omitted)); *Blue Mountain Energy v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 805 F.3d 1254, 1259–61 (10th Cir. 2015) (stating that an ALJ may use the preamble of a regulation as one tool to evaluate expert witness credibility, but should not treat the preamble as binding law); *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 569–70 (D.C. Cir. 2002) ("The preamble to a rule is not more binding than the preamble to a statute. A preamble no doubt contributes to the general understanding of a statute, but it is not an operative part of the statute . . . ." (quotations omitted)).

**3.**

Texas alleges in Count VI that CMS's effort to redefine "hold-harmless arrangement" violates the "major questions doctrine."  Docket No. 56 (Count VI); Docket No. 75 at 24.  Again, the Court agrees.

It is highly unlikely that Congress would authorize CMS to issue a rule with such sweeping economic implications by using the statutory language here.  *See West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (explaining that the major questions doctrine is a principle of statutory interpretation providing a "reason to hesitate before concluding that Congress meant to" delegate to an agency authority to resolve matters of great importance through suspect language (citation modified)); *see also Biden v. Nebraska*, 600 U.S. 477, 508 (2023) (Barrett, J., concurring) (explaining that the major questions doctrine is a common sense "tool for discerning—not departing from—the text's most natural interpretation").  Courts should be "reluctant to read into ambiguous statutory text" an agency's claimed authority to:  (1) resolve a matter of great political significance; (2) resolve a matter of great economic importance; or (3) intrude into an area that is the domain of state law.  *West Virginia*, 597 U.S. at 721, 723 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)); *Mayfield v. U.S. Dep't of Labor*, 117 F.4th 611, 616 (5th Cir. 2024).

Here, the Court has already held that CMS's interpretation of 42 U.S.C. § 1396b(w)(4)(C)(i)–(ii) is incorrect.  In addition, CMS's interpretation of the statute would address a matter of great economic significance and intrude into an area that is the domain of state law.  *See* 89 Fed. Reg. 41,257–58 (noting the fact that SDPs

"represent a substantial amount of State and Federal spending," accounting for "$52.2 billion" in 2022 and "$78.1 billion in 2023"); *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979) ("Commercial agreements traditionally are the domain of state law."). Accordingly, even if CMS's statutory argument were "plausible," *West Virginia*, 597 U.S. at 723, the agency fails to point the Court to "clear congressional authorization" for the Final Rule. *Id.*

Accordingly, the Court finds that CMS lacks explicit Congressional authority justifying the Final Rule.

\*    \*    \*

In sum, the Court grants the State's motion for summary judgment on Counts I, V, and VI and denies CMS's cross-motion for summary judgment on these claims.

## B. Arbitrary and Capricious

Texas further alleges in Count III that "the Final Rule adopts an arbitrary and capricious interpretation of 42 U.S.C. § 1396b(w)(1)(A)." Docket No. 56 at 15 (Count III); Docket No. 75 at 27. The APA requires courts to "hold unlawful and set aside agency action . . . found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *see also Texas v. United States*, 40 F.4th 205, 226 (5th Cir. 2022) ("[The] court must set aside any action premised on reasoning that fails to account for relevant factors or evinces a clear error of judgment." (quotation omitted)). "'[A]n agency's action must be upheld,

20

if at all, on the basis articulated by the agency itself,' not reasons developed post hoc." *Texas*, 40 F.4th at 226–27 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)).

Texas argues that "the Final Rule failed to acknowledge, let alone adequately explain, CMS's change in position regarding the definition of a 'hold harmless agreement.'" Docket No. 75 at 27. Texas points to evidence that CMS's position in this litigation is irreconcilable with: (1) its own DAB opinion in *In re: Hawaii*, Decision No. 1981 at *23, (2) the prior testimony of its own Office of the Inspector General that private pooling agreements do not violate the Act's prohibition on hold-harmless arrangements, and (3) similar assurances from the then-Director of Medicaid Financial Management Group "that CMS did not have the legal authority to reduce [federal financial participation] for actions exclusively among private parties," Ex. B at 1010. Docket No. 75 at 28. Texas also asserts that CMS never addressed the states' good-faith reliance on the agency's prior position.

In response, CMS argues it has "since 1992 taken the position that Subsection (4)(C)(i) [of the Social Security Act] prohibits States from making Medicaid or other payments to providers that result in taxpayers being repaid dollar for dollar for their tax costs." Docket No. 78 at 27. CMS argues it superseded the DAB decision in *In re: Hawaii* with a new rule in 2008. *Id.* at 25. And "the 2023 Bulletin and 2024 Rule merely applied the agency's existing interpretation of Subsection (4)(C)(i) to new facts." *Id.* at 27. In sum, CMS has maintained throughout the entire rule-making process that it is not doing anything new, and that its interpretation of the Social

Security Act has always been the same. *See, e.g.*, Docket No. 75, Ex. B at 108 (2022 Correspondence between CMS and Texas) ("CMS disagrees with Texas that it is attempting to implement the [withdrawn 2019 Rule]. CMS is doing nothing more than restating the language of what is already in statute and regulation.").

CMS's argument fails. First, CMS sidesteps the issue. Texas is challenging the agency's about-face on whether private-provider agreements fit the definition of hold-harmless arrangement. Texas is not challenging the general rule that states may not repay taxpayers their dollar-for-dollar tax costs. Not once in the entire Federal Register does CMS acknowledge that it's changing position. Instead, the agency maintains that Subsection (4)(C)(i) has always meant what CMS says it means now. Second, CMS is wrong when it says the 2008 Rule adopted CMS's current view of hold-harmless provisions. The actual text of the 2008 Rule changes nothing of substance and includes the same "grammatical link" found in the statute and code today. *Compare* 73 Fed. Reg. 9,699 (2008) *with* 42 C.F.R. § 433.68(f). And CMS at the time expressly agreed with Texas's position here—"the new regulation continues to apply a largely objective analysis . . . by prohibiting [Federal Financial Participation] for health care-related taxes *where the state has implemented a hold harmless provision*." 73 Fed. Reg. 9,690 (2008) (emphasis added). Thus, CMS cannot escape the fact that it has changed its position and refuses to explain it.

CMS's refusal to explain its change of position is enough for the Court to find that the Final Rule "fails to account for relevant factors," *Texas*, 40 F.4th at 226, and was not "reasonably explained," *Prometheus Radio Project*, 592 U.S. at 423. *See*

*Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 645 (D.C. Cir. 2020) ("[H]owever the agency justifies its new position, what it may not do is gloss over or swerve from prior precedents without discussion." (internal quotation marks and alterations omitted)).

Accordingly, the Court grants the State's motion for summary judgment on Count III.

### C. Abandoned Claims

CMS cross-moves for summary judgment on Counts II and IV. Count II alleges that the 2023 bulletin does not comport with the requirements of notice-and-comment rulemaking under 5 U.S.C. § 553. Docket No. 1 at 27–29. Count IV states that, "[a]lternatively, the 2008 Rule is not in accordance with law" under 5 U.S.C. § 706. *Id.* at 31–32. Texas's "supplemental complaint" did not supplement or withdraw either count, though it did note that "the promulgation of the Final Rule likely obviates any need to resolve Count II." Docket No. 56 at 14 n.2. CMS points out that Texas did not move for summary judgment on these claims in its dispositive motion, and Texas did not reserve these claims by filing a motion for partial summary judgment.

In response, Texas asserts only that it "incorporated the 2023 procedural claim" in its motion for summary judgment. Docket No. 87 at 38. And Texas argues its challenge to the 2008 Rule is not abandoned because it "is not challenging the procedural validity of the 2008 Rule." *Id.*

A party moving for summary judgment must identify each claim or defense on

which summary judgment is sought.  FED. R. CIV. P. 56(a).  The party must show there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  *Id.*  Texas did not move for summary judgment on either of these counts, and its opposition to CMS's motion fails to create a genuine issue of material fact or show why CMS is not entitled to judgment as a matter of law.

Accordingly, the Court grants CMS's motion for summary judgment on Counts II and IV.

### D. Scope of Relief

Texas asks the Court to vacate the challenged portions of the Final Rule and the 2023 and 2024 Bulletins, while CMS asks the Court to limit any relief to Texas.

The APA empowers courts to "hold unlawful and set aside" certain "agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C).  "Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation."  *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022).  The default rule is that vacatur is the appropriate remedy.  *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022).  "[I]n [the Fifth Circuit], the APA 'empowers and commands courts to set aside unlawful agency actions,' allowing a district court's vacatur to render a challenged agency action 'void.'"  *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 110 F.4th 762, 779 (5th Cir. 2024) (quoting *Texas v. Biden*, 20 F.4th 928,

957 (5th Cir. 2021), *rev'd on other grounds*, 597 U.S. 785 (2022)).[3]  Thus, "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (citation omitted).

CMS provides no reason to depart from the ordinary course here, asserting only that any relief granted should be limited to Texas.  The Fifth Circuit has squarely rejected similar arguments.  *See Tex. Med. Ass'n*, 110 F.4th at 780 (holding that such limited relief would be inconsistent with "one of the . . . primary justifications for the Final Rule, which is to promote uniformity and predictability." (internal quotations omitted)); *see also id.* ("In addition to being statutorily permissible, and required in this circuit, universal vacatur is appropriate here, because a party-specific injunction would thwart . . . uniformity and predictability").

### III. Conclusion

In view of binding Fifth Circuit precedent requiring wholesale vacatur of unlawful agency action, the Court **GRANTS-in-part** Texas's motion for summary judgment on Counts I, III, V, and VI (Docket No. 75) and **VACATES** 42 C.F.R § 438.6(c)(2)(ii)(G), 42 C.F.R § 438.6(c)(2)(ii)(H), and 42 C.F.R § 430.3(e) and the 2023 and 2024 Bulletins.   For the reasons detailed herein, the Court further

---

[3] *See Data Mktg. P'ship, LP*, 45 F.4th at 856 n.2 (holding that *Texas v. Biden*, 20 F.4th 928 "remains binding" "except for the portions of it on statutory interpretation and final agency action"); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 847 n.10 (2025) ("Nothing we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action.  *See* 5 U.S.C. § 706(2) (authorizing courts to 'hold unlawful and set aside agency action').").

**PERMANENTLY ENJOINS** CMS from enforcing an interpretation of 42 U.S.C. § 1396b(w)(4)(C)(i) found in the 2023 and 2024 Bulletins and the Final Rule.

The Court **GRANTS-in-part** CMS's cross-motion for summary judgment (Docket No. 78) and **DISMISSES** Counts II and IV. All other pending motions are denied as moot.

So **ORDERED** and **SIGNED** this **24th** day of **September, 2025.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE